UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| **Kathryn Bevan,** ) | **COMPLAINT** |
| ) | |
| **Plaintiff,** ) | Civil Action No. 3:23-cv-00636-CMC |
| ) | |
| v. ) | |
| ) | **JURY TRIAL** |
| **Experian Information Solutions, Inc.,** ) | **DEMANDED** |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## COMPLAINT

1. This is an action brought by Plaintiff, Kathryn Bevan, for actual, statutory, and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, (hereinafter "FCRA").

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. The FCRA likewise demands that consumers' disputes of inaccurate information be taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

4. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec.

1

2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

5.     To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681c and 1681e, which are two of the cornerstone provisions of the FCRA.

6.     One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

## JURISDICTION AND VENUE

7.     This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331 and §1332.

8.     Venue is proper in the Columbia Division because the Plaintiff resides in Sumter County and the Defendant transacted business in this division.

## PARTIES

9.     Plaintiff, Kathryn Bevan, is a resident and citizen of the State of South Carolina, Sumter County, and is over the age of twenty-one (21) years. Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10.    Defendant Experian Information Solutions, Inc., ("Experian") is an Ohio company

registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, C T Corporation System, 2 Office Park Court, Suite 103, Columbia, South Carolina 29223. At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

11. Defendant Experian is a credit reporting agency ("CRA") as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a. Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

12. Defendant disburses such consumer reports to third parties under contract for monetary compensation.

13. Defendant's acts and omissions alleged herein are in violation of the Fair Credit Reporting Act which requires Defendant to provide a consumer with a complete copy of their credit file upon request, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff's credit file, and which requires Defendant to conduct a reasonable reinvestigation of disputed information received from the Plaintiff.

14. The Plaintiff alleges that Defendant repeatedly failed to delete and suppress erroneous, false, misleading, or inaccurate information from the Plaintiff's credit file, and failed to reinvestigate Plaintiff's disputes. Defendant also repeatedly disseminated Plaintiff's inaccurate credit file to third parties, causing Plaintiff to suffer damages as set forth herein.

## FACTUAL ALLEGATIONS

15.     In 2004, John Morgan Bevan, Jr., Plaintiff's now deceased husband, opened a Capital One credit card Account ending 7526 (hereinafter referred to as the "Account"). Plaintiff was not a joint account holder on this Account and never agreed for her name to be added to this Account as a joint account holder.

16.     Plaintiff is not aware of how her name was added to this Account, but it was done without her knowledge or permission. Plaintiff never had possession of the credit card and never made any charges on the Account.

17.     On or about November 15, 2021, Capital One sold the Account to Midland Credit Management (hereinafter "MCM").

18.     On or about January 31, 2022, Plaintiff obtained a copy of her Experian credit report. On that date, Plaintiff's Experian credit report showed an 806 FICO score. There were no derogatory accounts on her Experian credit file and the Capital One Account was not reporting on her credit. However, Plaintiff's Experian report did show that Capital One had accessed Plaintiff's credit report on December 9, 2021. Capital One had no permissible purpose for accessing Plaintiff's credit file on that date as Plaintiff had no account with Capital One, and Defendant should have prevented that improper access.

19.     On July 22, 2022, Plaintiff obtained all three of her credit scores through Equifax. At that time, her Experian credit score had dropped from 806 to 748, because Defendant had begun reporting a derogatory collection account from MCM.

20.     On or about August 2, 2022, Plaintiff sent a letter to Defendant specifically

disputing the MCM collection account that had been added to her credit report. Plaintiff informed Defendant that the MCM collection account came from a Capital One Account which belonged to her deceased husband and that she never agreed to be liable for the Account. Plaintiff also informed Defendant that she had requested proof from Capital One and MCM that she had agreed to be liable on the Account and received nothing. Defendant received Plaintiff's letter on August 9, 2022, but failed to undertake any reinvestigation of Plaintiff's dispute.

21. Defendant never responded to Plaintiff's August 9, 2022, dispute and failed to provide any reinvestigation results to Plaintiff.

22. On or about September 15, 2022, Plaintiff sent a second dispute letter to Defendant. In this letter, Plaintiff again informed Defendant that she first learned that MCM was reporting a collection account on her credit in July, 2022. At that time, her credit score with Defendant dropped from 806 to 748. Plaintiff informed Defendant that the MCM Account was from a Capital One Account which belonged to her deceased husband and that she had never agreed to be liable for the Account. Plaintiff specifically disputed all liability on the Account and stated it was not her Account. Defendant received this letter on September 20, 2022, and thereafter, forwarded a copy of same to Defendant MCM. However, Defendant did no reinvestigation of its own to determine whether the MCM account was correctly and/or accurately reporting on Plaintiff's Experian credit file.

23. On September 29, 2022, Plaintiff received the dispute results from Defendant wherein Defendant informed her that MCM had verified the Account as accurate. As a result, the inaccurate and derogatory MCM collection account remained on Plaintiff's

5

Experian credit file. Plaintiff's September 29, 2022, Experian credit report also showed that Defendant had improperly allowed Capital One to access Plaintiff's Experian credit report on November 12, 2021, and September 13, 2022. Capital One had no permissible purpose for accessing Plaintiff's credit file on either of these dates. Additionally, Defendant improperly allowed MCM to access Plaintiff's Experian credit file on September 9, 2022.

24.     On or about October 26, 2022, Plaintiff sent a third dispute letter to Defendant. In this letter Plaintiff again informed Defendant that the MCM account was not her Account. Plaintiff reiterated that the MCM account was from a Capital One Account that belonged to her deceased husband and that she had never agreed to be added to or liable for the Account. Plaintiff informed Defendant that she had repeatedly requested proof from Capital One and MCM that she agreed to be on the Account, and that they had never provided same. Plaintiff also informed Defendant that the Account needed to be deleted immediately as she was applying for assisted living facilities and was afraid this derogatory Account would impact her ability to get approved. Finally, Plaintiff requested that Defendant stop allowing MCM to look at her credit report as they had no reason to be viewing her report. Defendant received this letter on October 31, 2022, and forwarded same to MCM. However, Defendant failed to perform any reinvestigation of its own to determine whether the MCM account was correctly and/or accurately reporting on Plaintiff's Experian credit file.

25.     Defendant never responded to Plaintiff's third letter.

26.     To date, Defendant continues to report the inaccurate and derogatory Account as belonging to Plaintiff.

27. Defendant repeatedly failed to make a reasonable reinvestigation into Plaintiff's disputes. Defendant also failed to provide Plaintiff a response to her dispute within 30 days.

28. Upon receipt of the ACDV responses, Defendant simply accepted MCM's verification of the Account and did not undertake to perform any reinvestigation of its own.

29. For over 35 years, courts have recognized that a CRA cannot rely upon its data furnisher exclusively, when the consumer disputes the accuracy of the furnisher's information. The CRA must make some independent investigation of its own. "Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg,* 608 F.Supp. 972 (M.D. Fla. 1985); *see also Bailey v. Equifax Credit Info. Servs.,* 2016 U.S. Dist. LEXIS 196516, 2016 WL 11540113 (N.D. Ga. Nov. 28, 2016); *Crane v. TransUnion*, 282 F. Supp. 2d 311 (E.D. Pa. 2003)(explaining that a CRA must "go beyond the original source" to satisfy its duties to investigate).

30. If the CRA knows or should know that the furnisher is unreliable, then a "reasonable reinvestigation" may require verifying the accuracy of the furnisher's information directly. The "grave responsibility" imposed by §1681i(a) must consist of something more than merely parroting information received from other sources. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

## COUNT ONE
### (Fair Credit Reporting Act)

31. The Plaintiff adopts, to the extent same are consistent with the allegations contained herein, the averments and allegations of paragraphs 15 through 30 hereinbefore as if fully set forth herein.

32. Defendant maintains and distributes credit data files on the Plaintiff's credit. Defendant negligently failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 *et seq.*, including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) failing to comply with the requirements of §1681e(a) by providing the Plaintiff's credit report to a third party without a permissible purpose under §1681(b).

33. Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

34. Defendant repeatedly failed to reinvestigate the Plaintiff's disputes regarding the inaccurate collection account being reported on her Experian credit file.

35. Defendant repeatedly allowed Capital One and MCM to view and/or access Plaintiff's credit reports when neither had a permissible purpose for such under §1681(b).

36. Due to Defendant's failure to comply with the requirements of the Fair Credit Reporting Act, the Plaintiff is entitled to statutory damages.

37. As a result of Defendant's violations of the FCRA, the Plaintiff suffered, continues

to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, anxiety, worry, fear, loss of sleep, frustration, fright, physical pain and sickness, and mental anguish. Additionally, the damage to Plaintiff's credit delayed her applying for assisted living facilities. Plaintiff has Parkinson's disease and Defendant's actions exacerbated Plaintiff's symptoms. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

38.     In addition, the Plaintiff has incurred litigation expenses and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

39.     Plaintiff is entitled to her attorneys' fees, pursuant to 15 U.S.C. §1681n(a).

## COUNT TWO
(Fair Credit Reporting Act)

40.     The Plaintiff adopts, to the extent same are consistent with the allegations contained herein, the averments and allegations of paragraphs 15 through 39 hereinbefore as if fully set forth herein.

41.     Defendant willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) failing to comply with the requirements of §1681e(a) by providing the Plaintiff's credit report to a third party without a permissible purpose under §1681(b).

42.     Defendant repeatedly failed to delete and suppress erroneous, false, misleading,

and/or inaccurate information from the Plaintiff's credit file.

43. Defendant willfully failed to reinvestigate the Plaintiff's disputes regarding the inaccurate collection account being reported on her Experian credit file.

44. Defendant willfully allowed Capital One and MCM to view and/or access Plaintiff's credit reports when neither had a permissible purpose for such under §1681(b).

45. As a result of Defendant's willful violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, anxiety, worry, fear, loss of sleep, family discord, anger, fright, physical pain and sickness, and mental anguish. Additionally, the damage to Plaintiff's credit file, delayed her applying for assisted living facilities. Plaintiff has Parkinson's disease and Defendant's actions exacerbated Plaintiff's symptoms. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

46. In addition, the Plaintiff has incurred litigation expenses, and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

47. Further, Defendant's acts and omissions were willful and demonstrate a reckless disregard for the Plaintiff's rights. Therefore, Defendant is liable to the Plaintiff for punitive damages in an amount to be determined by the jury.

48. Plaintiff is entitled to her attorneys' fees, pursuant to 15 U.S.C. §1681o(a)(2).

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A. Actual and statutory damages from Defendant pursuant to 15 U.S.C.

§1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B.Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C.Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and

D.For such other and further relief as the Court may deem just and proper.

*/s/ Penny Hays Cauley*
Penny Hays Cauley, Fed. ID No. 10323

*/s/ William K. Geddings*
William K. Geddings, Fed. ID No. 12584
Attorneys for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com


**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

*/s/ Penny Hays Cauley*
Of Counsel


**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Experian Information Solutions, Inc.
c/o C T Corporation System
2 Office Park Court, Suite 103
Columbia, South Carolina 29223

11